IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 2 3 2010

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

_____

L.T. SIMES, II

                    PLAINTIFF

This case assigned to District Judge _Wright_
and to Magistrate Judge _Young_

ARKANSAS JUDICIAL DISCIPLINE
AND DISABILITY COMMISSION ;

NO. **4 · 10 - CV - 1 04 7 SWW**

LEON N. JAMISON, Chairman; JOHN EVERETT;
H. WILLIAM ALLEN; CHARLES F. DEARMAN, JR.;
BILL FLY; REGINALD DUANE HAMMAN;
DERRICK W. SMITH; WILLIAM A. STORY;
CHRIS E. WILLIAMS; in their official capacities
as members of the Arkansas Judicial Discipline and
Disability Commission ;

**COMPLAINT**

MAXINE ALLEN; MARY BASSET; ROGER CARTER;
JUDY SIMMONS HENRY; JEROME LARKOWSKI;
DAVID N. LASER; VICTORIA K. MORRIS; STEPHEN
ROUTON; JOYCE WILLIAMS WARREN; in their official
capacities as alternate members of the Arkansas Judicial
Discipline and Disability Commission;

DAVID STEWART, in his individual and official capacity
as Executive Director of the Arkansas Judicial Discipline
and Disability Commission

                    DEFENDANTS

_____

## INTRODUCTION

1. In this civil rights action, Plaintiff L. T. Simes, a former sitting Circuit Judge, seeks to preliminarily and permanently enjoin the Arkansas Judicial Discipline and Disability Commission disciplinary proceeding against him, scheduled for July 28, 2010, because he is being subjected to a biased, bad faith proceeding.

2, This litigation arises out of Plaintiff's action as a Circuit Judge in 2005, wherein he sanctioned the Mayor of West Helena, Arkansas and his attorney pursuant to Rule 11 of the Arkansas Rules of Procedure for filing a motion to recuse without proper preparation and for the improper purpose of judge shopping because Plaintiff Simes had issued a Temporary Restraining Order against the Mayor.

3. The disciplinary proceeding to be enjoined was initiated in January, 2005 when judicial misconduct complaints by the Mayor and his attorney were filed with the Judicial Commission, citing the same allegations as those in the recusal motion.  In 2006, in *Weaver v. City of West Helena*, 367 Ark. 159 (2006), the Supreme Court of Arkansas reversed the Rule 11 sanctions imposed on the Mayor and his attorney and referred Plaintiff to Defendant Judicial Commission with a determination that Plaintiff had abused his discretion and violated the judicial canons in imposing the sanctions on the Mayor and his attorney.  The Arkansas Supreme Court's determination resulted from an *ex parte* appeal by the Mayor and his attorney.

4. On March 19, 2010, Defendant Judicial Commission merged the 2005 complaints of the Mayor and his attorney with the 2006 complaint of the Supreme Court, limiting the allegations against Plaintiff to the findings of the Supreme Court in *Weaver v. City of West Helena,* Supra.

2

5, On July 9, 2010, Defendant Judicial Commission denied Plaintiff's Motion to Dismiss its disciplinary action against him on federal and state constitution grounds of due process, equal protection and a denial of First Amendment rights.  The Judicial Commission also denied Plaintiff's motion for an unbiased hearing panel and a continuance of the hearing date.

## JURISDICTION AND VENUE

6.  Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331, and 1343(a)(3) in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Sections 1983, 1985, 1988 and the First, and Fourteenth Amendments to the United States Constitution.

7.  The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgement Act, 28 U.S.C. Sections 2210, *et. seg.,* this being an action in which the Plaintiff seeks, in addition to monetary damages, appropriate injunctive and declaratory relief.

8.  This is an action in which the Plaintiff seeks relief for the violation of his rights as guaranteed under the laws and Constitution of the United States, as well as those guaranteed under the laws and Constitution of the State of Arkansas.

9.  Venue is proper in this Court pursuant to 28 U.S.C § 1391 (b) because all of the Defendants reside in the same state and a substantial part of the events or omissions giving rise to this cause of action occurred in this judicial district.

## PARTIES

10.  Plaintiff, L.T. Simes, II resides in Helena-West Helena, Phillips county, Arkansas. He is technically a Circuit Judge for the First Division of the First Judicial Circuit of the State of Arkansas, having been suspended on or about November 5, 2009.  Plaintiff is currently a Respondent before the Judicial Commission in the case of *Ark. Jud. Discipline & Disability*

*Comm'n v. Simes,* Case No. 06-260/05-123.  Plaintiff has been ordered to appear at a disciplinary hearing before the Judicial Commission on July 28, 2010.

11.  The Arkansas Discipline & Disability Commission (hereafter "Judicial Commission") was created by Amendment 66 of the Constitution of the State of Arkansas.  It is located in Little Rock, Arkansas.  The Judicial Commission is comprised of nine persons: three justices or judges appointed by the Supreme Court of Arkansas; three licensed attorneys in good standing who are not justices or judges, appointed by the Attorney General of the state of Arkansas, one by the President of the Senate of the State of Arkansas, and one by the Speaker of the House of Representatives of the State of Arkansas; and three members appointed by the Governor of the State of Arkansas. Ark, Code Ann. §§16-10-402 (a)(1)-(3).  Alternate members of the Judicial Commission are selected and vacancies filled in the same manner. Ark. Code Ann. §§ 16-10-402(b)(1)-(3).  The Judicial Commission initiates or receives information, conducts investigations and hearings, and levies sanctions for violation of the Arkansas Judicial code of Conduct.  The Judicial Commission is being sued as an entity.

12.  David Stewart is the Executive Director of the Judicial Commission.  His principal place of business is in Little Rock, Pulaski County, Arkansas.  David Stewart is being sued in his official and individual capacity.

13.  Leon Jamison is a Judge Member and Chairman of the Judicial Commission.  His principal place of business is in Pine Bluff, Jefferson county, Arkansas.  Judge Jamison is being sued in his official capacity.

14.  John Everett is an Attorney Member and Vice Chairman of the Judicial Commission.

4

His principal place of business is in Fayetteville, Washington County, Arkansas. He is being sued in his official capacity.

15. H. William Allen is an Attorney Member of the Judicial Commission. His principal place of business is in Little Rock, Pulaski county, Arkansas. He is being sued in his official capacity.

16. Charles F. Dearman, Jr. Is a Public Member of the Judicial Commission. His principal place of business is in Monticello, Drew County, Arkansas. He is being sued in his official capacity.

17. Bill Fly is a Public Member of the Judicial Commission. His principal place of business is in Stuttgart, Arkansas County, Arkansas. He is being sued in his official capacity.

18. Reginald Duane Hamman is a Public Member of the Judicial Commission. His principal place of business is in North Little Rock, Pulaski County, Arkansas. He is being sued in his official capacity.

19. Derrick W. Smith is an Attorney Member of the Judicial Commission. His principal place of business is in Little rock, Pulaski County, Arkansas. He is being sued in his official capacity.

20. William A. Storey is a Judge Member of the Judicial Commission. His principal place of business is in Fayetteville, Washington county, Arkansas. He is being sued in his official capacity.

21. Chris E. Williams is a Judge Member of the Judicial Commission. His principal place of business is in Malvern, Hot Springs, Arkansas. He is being sued in his official capacity.

22. Defendants Maxine Allen, Mary H. Bassett, Roger Carter, Judy Simmons Henry,

5

Jerome Larkowski, David N. Laser, Victoria K. Morris, Stephen Routon, and Joyce William Warren are all Alternate Members of the Judicial commission.  They are being sued in their official capacities.

## ALLEGATIONS

23. Plaintiff L.T. Simes is a 60 year old African-American who was elected as the "first" one to be elected a Circuit Judge in Phillips County.  He assumed the bench in 1977 and was twice elected to subsequent terms in 2000 and 2004.  On or about November 5, 2009, he was suspended for the balance of his current term ending December, 2010 by a divided Supreme Court of Arkansas in the "Chandler case." *Infra; See also Judicial Discipline and Disability Commission v. Simes*, 2009 Ark. 543, at 1. He has qualified himself to run for another term in his judicial position in the November, 2010 election.

24. He is also a successful business man, being a partner in a local radio station company with his brother, Raymond Simes.  His wider family is also an upward mobile, well educated group involved in education in the county and participating in various local and regional political activities.  As a young attorney, he participated in several voting rights lawsuits that integrated the judiciary of his region of the state and expanded blacks participation in local and state government.

25. The backdrop to the present case is the experience of Plaintiff L.T. Simes as the first black Circuit Judge from Phillips County and one of four who integrated the region's judiciary. L.T. Simes had to suffer the slings and arrows that sometimes come with being a racial "first". He was tested, disrespected, and challenged by local, establishment attorneys from the beginning of his judicial career.  The Defendant Judicial Commission was an instrument in these

6

challenges.

26. Shortly after assuming the bench, Plaintiff's difficulties with white attorneys from a local firm began. From 1997 to 2000, he sanctioned one attorney three times (including a night in jail), as well as the attorney's associate for contempt. The associate ran against Plaintiff in the elections of 2000 and 2004, and both filed several complaints against plaintiff with the Judicial Commission. Both were involved in attempts to "judge shop" around Plaintiff by means of recusal motions.

27. From 2004 to 2007, a blizzard of 24 complaints were filed against Plaintiff with Defendant Commission, more complaints than any other judge under the jurisdiction of the Judicial Commission. Consequently, and essentially unknown to Plaintiff, the Judicial Commission conducted a continuing, broad base investigation of Plaintiff from 2004 thru 2006, that included soliciting complaints of misconduct from alleged witnesses about Plaintiff's conduct.

28. Despite the fact of so many complaints filed against him, until 2008 Plaintiff was sanctioned only twice. On October 15, 2004, Plaintiff, a singer and composer of religious songs, was given an "informal adjustment" by Defendant Commission for appearing in his judicial robes on the cover of a CD he produced. On information and belief, the anonymous source of that complaint, No. 03-178, was the lawyer who ran against Plaintiff and lost in 2004. This sanction was inconsistent with Advisory Opinion No. 2005-06, rendered on December 6, 2005 by the Arkansas Judicial Ethics Advisory Committee, that a judge placing a "robed photograph on the jacket cover" of a book he has authored did not violate the Arkansas Code of Judicial Conduct.

29. The second sanction of Plaintiff was a Letter of Admonishment on May 23, 2006 for "making personal solicitations for campaign contributions" during his 2004 election. That complaint, No. 04-206, was also made by his opponent in the 2004 election for Circuit Judge. The Supreme Court of Arkansas has noted, however, that the Eighth Circuit Court of Appeals has declared that some restrictions on solicitation for campaign contributions by judges violated the First Amendment. *See: Judicial Discipline and Disability Commission v. L.T. Simes*, Supra, , citing, *Republican Party v. White,* 416 F. 3d 738 (8th Cir. 2005)

## THE CHANDLER CASE

30. On or about January 30, 2008, L.T. Simes was notified that probable cause hearings pursuant to Rule 9C of the Rules and Procedure of the Arkansas Discipline and Disability Commission would be held on 5 pending complaints. Two of the complaints (Nos. 05-112 and 05-123) were filed by the Mayor of West Helena and his attorney against Plaintiff for issuing the T.R.O. in West Helena; one complaint (#07-259) was referred by the Supreme Court; and another complaint (# 07-142) had been previously dismissed and brought back as a new case.

31. The final case scheduled for a probable cause hearing was #06-171, known as the Chandler case. Fresh out of law school, Plaintiff had been hired in 1976 to resolve a family dispute involving rental property belonging to the Chandler family estate. In 1986 and 1988, the Probate Court ordered that rental payments be paid to Plaintiff. After receiving the first rental payment in 1989, plaintiff was discharged by the family and told to send the file to another attorney. The family never hired the other attorney and Plaintiff neglected to formally withdraw as attorney for the estate. The annual rent checks continued to be sent to Plaintiff Simes who deposited the checks into his trust account until he was elected as Circuit Judge in 1996. After

8

he assumed the bench, Plaintiff simply filed the checks away after failed efforts to deposit the checks with the Probate Court and to get the attorney to substitute for him.

32.  In 2003, after all the original heirs had died, another attorney was hired to investigate the matter. Plaintiff cooperated fully with the attorney to construct an accounting and to make the estate whole.  In 2005, an accounting proceeding was held in the matter, wherein Plaintiff represented himself.  The Probate Court ordered Plaintiff to pay the estate $24, 138 and denied him an offset of legal fees for his negligence in handling the estate's property.  Thereafter, Plaintiff agreed to a sanction of "caution" and restitution of legal fees to the estate by the Supreme Court Committee on Professional Conduct.

33.  The notice of a Probable Cause Hearing in the Chandler matter Plaintiff received in January of 2008 was related to a complaint with the Judicial Commission Plaintiff Simes had received notice of in March, 2006.   Unknown to Plaintiff, however, the Judicial Commission had started  investigating the Chandler estate matter in 2004, receiving information and complaints from several local attorneys who frequently made complaints against Plaintiff with the Judicial Commission.

34.  Throughout 2008, Plaintiff struggled to deal with the several, simultaneous cases the Judicial Commission began prosecuting at the beginning of the year.  He protested the clustering of the hearings in the cases, sought dismissals, continuances, and settlements of the cases.  The Judicial Commission finally dismissed case No. 07-142, which had been dismissed previously and brought back.  The Judicial Commission found probable cause for disciplinary hearings in the Chandler case, and Case Nos. 07-259, 05-112 and 05-123.  Plaintiff, on advice of his attorney, reluctantly accepted a Reprimand sanction in Case No. 07- 259, which was referred by

the Arkansas Supreme Court because Plaintiff had delayed entering an order for two months after

he had ruled from the bench in an election dispute case.  The Judicial Commission refused to

consider a settlement of the Chandler complaint and made it clear that it would only accept the

permanent removal of Plaintiff Simes from the bench.

35.  On November 26, 2008, Plaintiff was notified that a disciplinary hearing in the

Chandler matter was set for January 16, 2009, and that he would have only ninety (90) minutes to

present his case.  Recognizing that such a limitation was arbitrary and unreasonable, and that his

defense would require a minimum of 2 days to present, Plaintiff filed a mandamus petition with

the Arkansas Supreme Court.  Although the petition was denied, the Judicial Commission

immediately removed the 90 minute time limit on Plaintiff's presentation of his defense at the

disciplinary hearing.

36.  After the disciplinary hearing on January 16 and February 19, 2009, the Judicial

Commission recommended to the Arkansas Supreme Court that Judge Simes be permanently

removed from his position as Circuit Judge for practicing law and serving as a fiduciary while on

the bench.  In a divided Opinion delivered on November 5, 2009, a majority on the Court found

that the Judicial Commission's determination that Plaintiff had practiced law and served as a

fiduciary in violation of Canons of Judicial Conduct was not clearly erroneous.  However, the

majority declined to approve the Judicial Commission's recommendation of removal and,

instead, suspended plaintiff for the balance of his term.  In a dissenting opinion that disagreed

with the majority's finding that Plaintiff had practiced law and served as a fiduciary, Associate

Justice, Paul Danielson, branded the Judicial Commission's argument that Judge Simes had

practiced law as "nonsensical."

37.   Immediately after the Supreme Court rendered its decision in the Chandler case, the Executive Director of the Judicial Commission was quoted in the Arkansas Democrat-Gazette, as follows:

> *David Stewart, executive director of the Judicial Discipline and disability Commission, said that since the court didn't bar Simes from running for judge again, the commission would move forward with two outstanding cases having to do with misconduct.*
>
> *No dates have been set yet on any disciplinary hearings related to those matters, which include accusations of improperly pressuring the Helena-West Helena mayor to reinstate a fired police chief and of ordering a newspaper reporter not to write a story, and a matter in which Simes is said to have attempted to prevent people from talking to the commission, Stewart said.*

## CASE NO. 06-260/05-123

38.   The Executive Director's reference to "two outstanding cases" against Plaintiff referred to Case Nos. 05-112 and 05-123 which were filed in January 2005 and merged on November 21, 2008 for a disciplinary hearing.   Neither case, however, dealt with Plaintiff attempting "to prevent people from talking to the Judicial Commission,"contrary to Stewart's statement.

39. These complaints emanated from proceedings in *City of West Helena v. Johnny Weaver,* in the Circuit Court of Phillips County, Arkansas, case no. CV-2005-4.   They also compose the underlying factual context of the Supreme Court's determination that Plaintiff abused his discretion, and the Court's referral him to the Judicial Commission, which resulted in complaint No. 06-260.   *See: Weaver v. City of West Helena,* 367 Ark. 159 (Ark. 2006)

40.   The origins of Case Nos. 05-112 and 05-123 were as follows.   On January 3, 2005, L.T. Simes issued a Temporary Restraining Order (T.R.O.) against the Mayor of West Helena,

11

Arkansas restraining him from interfering with "the day to day operations" of that city's police department after the city council of West Helena reinstated the police chief, who had been fired by the Mayor. The T.R.O. was issued at the request of the City Council after a confrontation between the Mayor, members of the city council, and the reinstated police chief occurred at police headquarters earlier that day.

41. Angry at Plaintiff for issuing the T.R.O., the Mayor met with his attorney, the acting police chief and another officer at the home of his attorney on January 3, 2005. The Mayor wanted to obtain Plaintiff's recusal and to file a complaint with the Judicial Commission. He told his attorney at that meeting that, months before, Plaintiff had discussed the suspension of the reinstated police chief and asked him if he could help him. The Mayor also claimed that Plaintiff had economic and financial interests with members of the city council because of his ownership of the radio station property. Finally, The Mayor claimed that Plaintiff knew that the appeal of the police chief's firing was before another Circuit Judge at the time he issued the T.R.O..

42. The Mayor's attorney agreed to file the recusal motion if the Mayor filed a judicial complaint. The attorney did not ask the Mayor for a sworn affidavit. He deemed a complaint to the Judicial Commission to be a sufficient writing on which to base a motion to recuse, although he knew that a motion to recuse could not be based on a complaint to the Judicial Commission and admitted as much to Plaintiff during the hearing. He knew as well that he did not have to call Plaintiff to testify and told the Mayor that he would not. And, as he argued in his brief on appeal, Plaintiff would be obligated to disqualify himself if, under attack by a recusal motion, he became "embroiled in a personal dispute." The Mayor's attorney told him where and to whom to make the judicial complaint and instructed the two police officers to write letters to the

Judicial Commission in support of the Mayor's complaint.  The Mayor's complaint was denominated No. 05-112.

43.  Plaintiff scheduled a hearing on the T.R.O. for January 6, 2005.  In the interim between the hearing and the meeting at his home, the attorney did nothing to investigate or corroborate the Mayor's claims that Plaintiff had a conflict.  On January 6th, the Mayor informed his attorney that he had mailed the complaint to the Judiciary Commission and the attorney filed the recusal motion he had already prepared.

### PROCEEDINGS ON JANUARY 6, 2005

44.  Plaintiff Simes received a copy of the recusal motion about an hour before the hearing on the T.R.O. was convened.  He was shocked and surprised.  He announced to the parties that the recusal motion had to be decided before the merits of the restraining order could be considered.  The Mayor took the stand to testify regarding the recusal motion and Plaintiff informed the Mayor's attorney he would not allow leading questions because of the nature of the proceeding.  Plaintiff cautioned him several times to that effect as the Mayor testified about the conversation he allegedly had with the Plaintiff.  After his attorney asked the Mayor, "what kind of facial expressions did the judge use that would have indicated any kind of displeasure," Plaintiff informed the attorney that if he continued to ignore his instructions regarding leading questions, he would consider him in contempt.  The Mayor testified that his claim that Plaintiff had an economic interest with city council members was based on the fact that plaintiff's radio station had broadcast the city council's first meeting of the year.  When the Mayor denied knowing whether the broadcast was "for pay or for free," Plaintiff summoned the attorneys to the bench and called their attention to Rule 3.1 of the Rules of Professional Conduct and indicated

that the motion for recusal was not filed with "proper preparation." The Mayor's attorney then stated to Plaintiff: " I just want to state for the record that . . . . your demeanor and your facial expressions toward me are very hostile at this point."

45. After the Mayor's attorney introduced the subject of the Mayor's complaint to the Judicial Commission, Plaintiff became concerned about a violation of the rules of confidentiality pertaining to such complaints. He requested the attorneys to brief the question whether the complaint could be admitted into evidence, and adjourned the hearing to his chambers for further proceedings. After further discussion regarding the effect of the Mayor's complaint to the Judicial Commission and queries to the Mayor as to when the alleged conversation with Plaintiff took place ("it might have been the last part of September or October. Between the 29th and 5th of October."), Plaintiff closed the hearing with the observation that the timing of the motion to recuse and the filing of the complaint to the Judicial Commission raised the issue of "judge shopping".

<u>**PROCEEDINGS ON JANUARY 7, 2005**</u>

46. The hearing was continued the next day, January 7, 2008. At the outset, Plaintiff indicated that the hearing was a continuation of the hearing on the recusal motion and asked the Mayor's attorney whether he wanted to proceed with his motion to recuse. Receiving an affirmative answer, Plaintiff referred to his previous reference to Rule 3.1 of the Rules of Professional Conduct and stated that he had reviewed Rule 11 of the Rules of Civil Procedure, and read the same into the record.[1]

---

[1] In pertinent part, Rule 3.1 states: *A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of*

47.  Plaintiff then swore the Mayor's attorney as a witness and, over the latter's objection, sequestered the Mayor from the hearing.   Plaintiff questioned the attorney as to whether he had discussed with the Mayor  his rights and obligations and practical implications as indicated in the preamble to the Rules of Professional Conduct.  Did he point out that the "law's procedures can only be for legitimate purposes?"  The Mayor's attorney responded that he had not discussed the preamble but he had complied with the Rules of Professional Conduct.  He testified that he tells all his clients to tell the truth and that he makes "diligent inquiry into the facts that are being formed" by his clients to make a determination whether they have a "bona fide" case; and that he had done that in this case.  He further testified that he felt he had a duty to file a motion for recusal based on the facts that were contained in the complaint to the Commission.  He made sure that "there was a legitimate basis"-- "I asked [the Mayor] on numerous occasions to confirm or verify that what he was telling me was true and correct, which he did over and over and over again.  And he said that he was telling the absolute truth.  That you and him were the only two there at the time of the conversation took place (sic) and that you knew that you talked to him."

48.  Plaintiff asked what proof did he have of his allegation that "[Plaintiff] knew about another proceeding" at the time he issued the T.R.O.   The attorney answered that the information came from his client; and he then declined to comment further on the basis of attorney-client privilege and stated he would instruct the Mayor to do the same.  Plaintiff referred to Rule 11 and pointed out that he had given him two opportunities to not proceed with his motion, whereupon the attorney replied: "I have to proceed, your honor, based on the testimony that was presented– I

---

*existing law.*  Rule 11 of the Arkansas Rules of Civil Procedure essentially tracks the federal Rule 11.

have to. I can't withdraw it because you want me to. I understand that you want me to withdraw the motion." Again Plaintiff asked him what proof did he have that the Plaintiff knew "another proceeding was pending before another judge." The attorney replied: "it was included in the complaint to the Arkansas Judicial Discipline and Disability Commission" given to him by his client. Plaintiff then asked the attorney did he assist the Mayor in making the complaint to the Judicial Commission and the attorney avoided a "yes" or "no" answer, saying "your Honor, my client made the complaint." Plaintiff repeatedly asked the attorney for the evidentiary basis for the allegation that he had issued the T.R.O. knowing about another proceeding on the same matter. The attorney could only say that he "assumed" Plaintiff knew about the other case and that his client provided him the information. Finally, the attorney said that he had "much less than 24 hours from the time that the complaint and information was brought forward to the time for the Motion for Recusal, I did the best job that I could."

49.    Plaintiff next asked the Mayor's attorney if the allegation that Plaintiff or his family member had an "economic interest in one or more of the parties" to the proceeding was true. The attorney responded that he was told it was true and, upon further questioning, he stated that a member of the City Council, arranged to hire the Plaintiff's radio station through Plaintiff's brother and that the city council member "may have an ownership interest in a store housed in a building "owned or partly owned by your Honor and that he has a partial ownership. But I am not sure about that." He stated that he did not check that fact because "I had information about the radio station that was brought to my attention. And I had a duty to bring it forward." As to other members of the city council who were plaintiffs in the case, the attorney contended that the court had an economic interest with them because the city council apparently hired his radio

16

station to broadcast city council meetings.

50. Plaintiff next questioned the Mayor's attorney on Rule 3.1 and then attempted to question him about the Mayor's claim that he had a conversation with Plaintiff about the police chief the Mayor had fired. The attorney interposed the "attorney-client privilege" and, when he was asked about when the Mayor told him about the alleged conversation, he stated that he hesitated "to go further for fear of reprisals by this court." After some questions concerning his knowledge about a previous, well known case involving "judge shopping", Judge Simes stated: "There is an issue in this case about judge shopping." The attorney replied:

> Yes, sir, there is. I think on both sides. I heard what [the opposing attorney] said on the record yesterday that he thought there may have been some judge shopping, and there may well have been some judge shopping on their part. We weren't judge shopping. The only lawsuit I've filed, Judge, 04-398. The clerk pulled a chip. It was assigned to [another judge] and there I was. The [opposing attorney] filed this lawsuit and it just happened to be assigned to you. When the [Mayor] told me what had transpired after [the police chief's] termination between you and him, I filed a Motion for Recusal. It had absolutely nothing to do with my preference as a judge as who is going to be the judge because I don't have one. I don't care who is the judge, other than you because I think you should recuse.

50. The Mayor's attorney denial that he and the Mayor were "judge shopping" when they accused Judge Simes of misconduct in the Motion to Recuse and their complaints to the Judicial Commission is given the lie by a statement he submitted to the Supreme Court Committee on Professional Conduct in March of 2006.[2] In explaining why he filed the Motion to Recuse in the *Weaver* case, the attorney stated: "At that time, I was personally aware that there were other situations where Judge Simes had ruled in cases in which it appeared that the judge had an interest." He followed that remark with descriptions of two instances where the Judge

---

[2] Plaintiff referred the Mayor's attorney to the Committee in his April 29, 2005 order in the *Weaver* case.

supposedly had conflicts by virtue of his family connections and refused to recuse.  In that statement, the attorney admitted that he was motivated to file the recusal motion in the *Weaver* case not simply because of the Mayor's allegations as he contended in the hearing before Plaintiff, but also because of his belief that Plaintiff Simes had "ruled" in other cases he allegedly had a personal interest.

51.  Louis Etoch, a criminal defense attorney, who practiced before Plaintiff and opposed the Mayor's attorney frequently in criminal cases in the latter's role as a prosecutor, also opined during his deposition that the Mayor's attorney continued cases because "he didn't want to try a case in front of Judge Simes."

52.  Plaintiff then called the Mayor back to the stand and his attorney advised him that he did not have to "answer any questions that were attorney-client privileged."  When asked what proof and knowledge he had that the court knew about another proceeding pending before another judge, the Mayor challenged Plaintiff,  stating: "Judge, are you telling me that you were not aware that [the fired chief of police] had filed in the circuit court?"  After being pressed by Plaintiff, the Mayor finally stated: "I have no proof."  He further testified that he had not told his attorney that he had no proof, and his attorney objected to Plaintiff inquiring into communications between him and the Mayor.  Plaintiff proceeded to questioned the mayor as to his knowledge and understanding of the Rules of Professional Conduct related to fraud, misrepresentation, dishonesty and prejudicial to the administration of justice.  Throughout the Mayor's testimony, his attorney objected to Plaintiff's's examination of the Mayor as to his knowledge of the Rules of Professional Conduct on grounds of relevancy.  Plaintiff overruled the objections and pointed out that he was considering Rule 11.

18

53. After further discussion and the offer of the Mayor's's complaint against Plaintiff with the Judicial Commission as evidence that the Motion to Recuse had a proper basis, Plaintiff called a city councilman to the stand.

54. The city councilman, testified that he arranged the broadcast of the first city council meeting with Plaintiff's brother without the knowledge of other city council members and there was no payment for the broadcast nor a promise of payment. The city councilman also denied owning or having an interest in the store in the building housing Plaintiff's radio station, and indicated that the ownership of the store could be ascertained from the store's privilege (business) licence.

55. During his cross-examination of the city councilman, after an objection by opposing counsel to his line of inquiry, the Mayor's attorney stated, *inter alia*: "It sounds to me like you are considering sanctions, whether it be to strike this motion for recusal or not."

56. Plaintiff adjourned the hearing on January 7th without making a ruling on the recusal motion and without dissolving the T.R.O.

57. On or about January 21, 2005, the Mayor's attorney filed his complaint against Plaintiff with the Judicial Commission, reiterating the allegations of the Mayor's complaint and the recusal motion, and adding allegations of misconduct on the part of Plaintiff during the hearings on January 6th and January 7th. That complaint complaint was denominated Number 05-123.

58. On January 28, 2005, Plaintiff resumed the hearing on the T.R.O., announcing that he was denying the Motion for Recusal.

59. On or about April 28, 2005, Plaintiff issued an order in *City of West Helena et al. v.*

19

*Johnny Weaver*, civ.-2005-4 and, *inter alia*, sanctioned the Mayor and his attorney for conduct

prejudicial to the administration of justice.

60. Plaintiff's order was subsequently appealed to the Arkansas Supreme Court. The

Supreme Court, in its Opinion on June 29, 2006, found all the issues in the appeal to be moot,

except for the sanction issue. The Court reversed the sanction order and referred the matter to

the Judicial Commission, resulting in complaint 06-260. *Weaver v. City of West Helena*, 367

Ark. 159 (Ark. 2006)

61. In its Opinion, the Supreme Court held:

> In summation, the procedural requirements for the imposition of sanctions
> under Rule 11 were disregarded by Judge Simes, and the appellants were
> subjected to a de facto Rule 11 hearing of which they were given no
> notice. That hearing occurred before the court ultimately failed to
> establish the falsity of the allegations in the motion for recusal, and the
> court ultimately failed to establish that the allegations were false. Judge
> Simes relied on improper bases in his order imposing the sanctions. For
> the foregoing reasons, we conclude that Judge Simes abused his discretion
> by imposing sanctions upon the appellant under Rule 11. Based on the
> record before us, it appears that Judge Simes has violated the Arkansas
> Code of Judicial Conduct. Accordingly, we direct the clerk of this court to
> forward a copy of this opinion to the Arkansas Judicial Discipline and
> Disability Commission.

62. The Supreme Court's determination in the *Weaver* case that Plaintiff had violated the

Arkansas Code of Judicial Conduct was solely on the basis of an *ex parte* appeal by the Mayor

and his attorney. Plaintiff had no opportunity to put forth his side of the story and the Supreme

Court did not request that he do so. The attorney representing the city council at the hearing

before Plaintiff did not file a responsive brief or participate in the appeal in any manner. The

appellate record and brief considered by th Court was totally the product of the Mayor's attorney,

and was the basis for the Supreme Court's determination.

63. Had the Supreme Court heard Plaintiff's side of the story and a response to the claims of the Mayor and his attorney, the Court would have been made aware that Arkansas Court of Appeals, *W. Todd Ver Weire v. Arkansas Department of Human Services*, 26 S.W. 3rd 132, 71 Ark. App. 11 (2000) has stated that " Under the language of the rule itself, the trial court may impose sanctions for Rule 11 violations upon its own initiative." Id at ftn. 1. A counter argument would have pointed out in the record below the several times during the hearings on January 6th and 7th where Plaintiff made clear to the attorney for the Mayor that he thought the Motion for Recusal was not "properly prepared," and that the Court was considering the motion in light of Rule 11, and where he gave the attorney an opportunities for "safe Harbor." Had Plaintiff an opportunity to respond, the Court would have been made aware that the Mayor and his attorney were intentionally provocative, challenging, and disrespectful during the proceedings in order to elicit emotional reactions from the Plaintiff. A rebuttal to the claims of the Mayor's attorney could have easily shown the Supreme Court that the procedural requirements were satisfied during Plaintiffs hearings in the *Weaver* case.

64. The appellate record of the *Weaver* case was sealed by the Supreme Court. After the referral by the Supreme Court, the Judicial Commission filed a motion for the release of the record, which was granted on September 7, 2006. But the Judicial Commission showed no further interest in the appellate record and its contents. It neither retrieved a copy of the record nor provided a copy to Plaintiff as required by the discovery rules governing the Judicial Commission. Plaintiff had to file a motion with the Supreme Court for access to the record, which was granted on June 25, 2010.

## PROCEEDINGS IN COMPLAINTS NOS. 05-112, 05-123, AND 06-260

65. On or about February 18, 2010, the Petitioner in the Judicial Commission proceeding (.i.e., the legal/administrative office of the Commission?) filed a motion to dismiss case numbers 05-112/123 of the three pending cases.

66. On February 24, 2010, in an email to counsel for Plaintiff, the Executive Director and lead counsel of the Judicial Commission wrote:

> In case #06-260 the sum total of the evidence needed to prove an abuse of discretion requires no more proof than introduction of the Supreme Court opinion in *Weaver v. City of West Helena,* 367 Ark. 159 (Ark. 06/29/06). See paragraph 30. At a minimum this would be a violation of Canon 1 and 2A, under the old Canons. . . . I would engage in very little discovery, other than requests for admissions, since the opinion is the heart of the case, supported by the documents submitted by the parties to the appeal. There will be no necessity to call any witnesses.

Paragraph 30 mentioned in the foregoing passage is the paragraph in the *Weaver* Opinion where the Supreme Court concludes that Plaintiff "appears to have violated the Judicial Code of Conduct," based on the findings the Judicial Commission lists in its April 9, 2010 pre-trial order as the only extant issues in Case No. 06-260/05-123. *See below,* ¶ *68.*

67. On March 19, 2010, the Judicial Commission "found probable cause to proceed on case number 06-260," and dismissed the allegations in Case Nos. 05-112 and 05-123 that were "found to be moot in the case *Weaver v. City of West Helena,* 367 Ark. 159 (2006)." The remaining allegations in those cases were merged with Case No. 06-260.

68. On or about March 23, 2010, Plaintiff received a Formal Statement of Charges pursuant to Rule 9E(3) of the applicable Rules of Procedure of the Judicial Commission, wherein it was alleged that Plaintiff violated Canons 1, 2, and 3 of the Code of Judicial Conduct.

Therein, the "Facts Alleged" section referred to the Supreme Court's referral in the *Weaver* case and stated that " the facts established by the [Supreme] Court and the process used by Judge Simes constitutes the basis of this case."

69.  On April 9, 2010, the Hearing Panel appointed to preside over Plaintiff's disciplinary hearing issued a pre-trial order wherein the "Commission's actions " on March 19, 2010 were interpreted.  The order stated, *inter alia,* that:

> The hearing Panel interprets the Commission's actions to require the parties hereto to solely address in the discovery and the trial of this case the following:
>
> (1) The procedural requirements for the imposition of sanctions under Rule 11 were disregarded by Judge Simes;
> (2) The appellants were subjected to a *de facto* Rule 11 hearing of which they were given no notice;
> (3) Hearing occurred before the court attempted to establish the falsity of the allegations in the motion for recusal, and the court ultimately failed to establish that the allegations were false;
> (4) Judge Simes relied on improper bases in his order imposing the sanctions;
> (5) Judge Simes abused his discretion by imposing sanctions upon the appellant under Rule 11.

70.  All of the findings the Supreme Court listed in its decision on the *Weaver* appeal involved Plaintiff making findings of fact, reaching legal conclusions and applying the law as he understood it.

71.  Under Rule 9B of the Rules of Procedure applicable to Plaintiff's case, in the absence of fraud, corrupt motive or bad faith, the Judicial Commission "shall not taken (sic) action against a judge for making findings of fact, reaching a legal conclusion or applying the law as he understands it.  Claims of error shall be considered only in appeals from court proceedings."

72.  Defendant Judicial Commission has no authority to act as an appellate court.  It cannot review, reverse or vacate a judge's decision.  Nor can it review, reverse, vacate or ignore a

23

decision of the Arkansas Supreme Court. It must abide by, follow and accept the findings, rulings, and determinations of the Supreme Court.

## FIRST CAUSE OF ACTION

73. Plaintiff incorporates paragraphs 1 through 72 of the Complaint as if fully stated herein.

75. Defendant Judicial Commission has targeted Plaintiff for permanent removal from his position as a Circuit Judge in the State of Arkansas.

76. The disciplinary proceeding brought against Plaintiff is a bad faith proceeding brought to harass, to punish, and to retaliate against Plaintiff; and to prevent and to deter him from exercising his rights under the First Amendment to the United States Constitution to be elected and to serve as a Circuit Judge, all in violation of his right to due process and equal protection under the Fourteenth Amendment to the United States Constitution and the laws and Constitution of the State of Arkansas, in conjunction with the Civil Rights Act of 1871, 42 U.S.C Section 1983.

## SECOND CAUSE OF ACTION

77. Plaintiff incorporates paragraphs 1 through 76 of the Complaint as if fully stated herein.

78. The disciplinary proceeding plaintiff is subjected to is a defective, arbitrary, biased, and inadequate proceeding and, as such, is incompetent to adjudicate the issues fairly and to provide Plaintiff with an opportunity for a meaningful and fair hearing and disposition, and a meaningful and fair review of the proceeding that he is entitled to pursuant to his rights to due process and equal protection under the Fourteenth to the United States Constitution in

24

conjunction with 42 U.S.C. 1983, and the laws and Constitution of the State of Arkansas.

## THIRD CAUSE OF ACTION

79. Plaintiff incorporates paragraphs 1 through 78 of the Complaint as if fully stated herein.

80. Defendant Judicial Commission conduct, actions, policies, practices, and customs have been arbitrary and capricious in its investigations and prosecution of complaints and dispositions of complaints against Plaintiff; and Defendant has repeatedly fail to follow its own rules and regulations with regard to such matters as meaningful notices, timely dispositions of complaints, preservation of evidence and fair, objective adjudications.

81. Plaintiff has been denied procedural and substantive due process by Defendant in its handling of complaints against Plaintiff over several years in violation of his rights under the Constitution of the United States and 42 U.S.C. 1983, and the Constitution, laws and regulation of the State of Arkansas.

## FOURTH CAUSE OF ACTION

82. Plaintiff incorporates paragraphs 1 through 81 of the Complaint as if fully stated herein.

83. The complainants in Case Nos. 05-112 and 05-123 conspired to remove Plaintiff from his position as the judge in the *weaver* case and to remove him from his position as a Circuit Judge by knowingly and improperly filing judicial complaints and a Motion for Recusal containing false and fraudulent allegations for the improper purpose of retaliating against Plaintiff for carrying out his judicial duties and his family connections.

84. Defendant Judicial Commission joined the effort of the aforesaid complainants to

remove Plaintiff from his judicial position by continuing to prosecute the false, baseless, and scandalous complaints after their defective and false character became apparent, in violation of Plaintiff's right to due process and equal protection under the Fourteenth Amendment to the United States Constitution and his right to be free from discrimination and conspiracies because of his race, class and family connections, all in conjunction with the Civil Rights Acts of 1866 1871, 42 U.S.C. Sections 1981, 1983, and 1985.

### FIFTH CAUSE OF ACTION

85. Plaintiff incorporates paragraphs 1 through 84 of the Complaint as if fully stated herein.

86. After the Supreme Court of Arkansas declined to remove Plaintiff permanently from the possibility of being elected a Circuit Judge, Defendant David Stewart announced publicly that Plaintiff had been accused of ordering a newspaper reporter not write a story, of improperly pressuring a Mayor of Helena-West Helena to reinstate a fired employee and attempting to prevent people from talking to the Judicial Commission.

87. Defendant's claims were false, defamatory, and unfairly stigmatized Plaintiff and violated the Judicial Commissions rules and regulations regarding the confidentiality of proceedings within the jurisdiction of the Judicial Commission.

88. As there were charges pending against Plaintiff and he would be running for his judicial position again, the defamatory statements violated his rights under the Fourteenth Amendment to the Constitution of the United States, in conjunction with 42 U.S.C. 1983 and State law as well.

89. The Plaintiff suffered injuries and damages.

WHEREFORE, and in light of the foregoing, it is respectfully requested that the court assume jurisdiction and thereafter:

1. Award appropriate declaratory judgement relief;

2. A preliminary and a permanent injunction against Defendants prohibiting them from conducting the hearing schedule for July 28, 2010.

3. Award appropriate compensatory and punitive damages.

4. Invoke pendent claim and pendent party supplemental jurisdiction where appropriate.

5. Empanel a jury to consider the merits of the Fifth Claim.

6. Award reasonable attorney's fees.


DATED: July 21, 2010


Respectfully Submitted,

GEORGE E. HAIRSTON
64 fulton Street, STE. 502
New York, New York 10013
(212) 226-3310
(212) 513-1006/Fax
Georgehairston@aol.com
NY Ba r# 1575513

Terrence Cain
Ark. Sup. Ct. Reg. No. 99128
Attorney at Law
208 Brown Street
Little Rock , Ar. 72205-5841
Tel. (501) 6647512
Fax (501) 664-5013
Email Terrencecain@windstream.net

Attorneys for Plaintiff L.T. Simes II