IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

L.T. SIMES, II,

PLAINTIFF

VS.                    CASE NO. 4:10CV01047 JFB

ARKANSAS JUDICIAL DISCIPLINE
AND DISABILITY COMMISSION, ET AL.                    DEFENDANTS

## MEMORANDUM AND ORDER

This matter is before the court on defendants' motion to dismiss the plaintiff's first amended complaint, Filing No. 43.  This is a civil rights action under 42 U.S.C. § 1983. The plaintiff, Arkansas State Circuit Court Judge L.T. Simes, alleges the defendants violated his First Amendment rights and his Fourteenth Amendment rights to due process and equal protection.   He also asserts a supplemental state law claim for defamation.   Judge Simes seeks declaratory and injunctive relief, as well as compensatory and punitive damages and attorneys' fees.  See Filing No. 40, Amended Complaint.  Venue is proper under 28 U.S.C. § 1391.  This court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

## INTRODUCTION

Judge Simes, the plaintiff, is an African-American Arkansas state court judge. He was 60 years old at the time this lawsuit was filed and is the first African-American judge elected in his county.  He assumed the bench in 1997 and the voters reelected him in 2000, 2004 and 2010.

The Arkansas Discipline & Disability Commission (hereinafter "Commission"), created by Amendment 66 of the Constitution of the State of Arkansas, has nine Commissioners:  three are judges appointed by Supreme Court of Arkansas; three are licensed attorneys in good standing, one is appointed by state attorney general, one is appointed by the president of the Arkansas senate, one is appointed by the speaker of the house for Arkansas; and three are appointed by the governor.  Ark. Code Ann. §§ 16-10-402(a)(1)-(3).  Judge Simes sues the Commission as an entity.

Defendant David Stewart is the executive director of the Commission.  Defendant John Everett is an attorney Commissioner and is vice chair of the Commission. Defendants William Story and Chris E. Williams are judges and members of the Commission.  H. William Allen is also an attorney Commissioner.  Defendant Reginald Duane Hamman is a public member of the Commission.  All of the Commissioners are sued in both their individual and official capacities.

## BACKGROUND AND PROCEDURAL HISTORY

This action involves two recent disciplinary complaints against Judge Simes.[1] The facts are set out in the Arkansas Supreme court's opinions on those complaints and need not be fully repeated here.  *See* *Judicial Discipline and Disability Comm'n v. Simes*, 354 S.W.3d 72, 73 (Ark. 2009) and *Arkansas Judicial Discipline and Disability Comm'n v. Simes,* — S.W.3d —, 2011 Ark. 193, 2011 WL 1681672 (2011) ("the Weaver

---

[1] Several other judicial complaints have been filed against Judge Simes that are only marginally relevant to this case. In one, the Arkansas Supreme Court sanctioned Judge Simes for appearing in a robed photograph on the cover of a CD he produced.  He received an "informal adjustment" by the Commission for this offense.  The second sanction involved a letter of admonishment dated May 23, 2006, for making personal solicitations for campaign contributions during his 2004 election.  Another involved a previously dismissed case that the Commission revived as a new case.  The Commission ultimately dismissed that complaint.  In another instance, Judge Simes was reprimanded for failure to timely dispose of a motion where he waited two months to enter an order in an election case.

case"). Briefly, in 2009, following a disciplinary hearing, the Commission recommended to the Arkansas Supreme Court that it should permanently remove Judge Simes from the bench. *Simes*, 354 S.W.3d at 73 ("the Chandler case"). The Arkansas Supreme Court, however, declined to follow the Commission's recommendation of permanent removal from the bench and instead elected to suspend Judge Simes for the remainder of his existing term rather than to remove him from the bench permanently. *Id.* at 85; Amended Complaint, Filing No. 40, ¶ 31. The Commission later addressed an additional judicial complaint against Judge Simes. *See Simes*, — S.W.3d —, 2011 Ark. 193, 2011 WL 1681672; Filing No. 40, ¶¶ 43-52. After a disciplinary hearing in that case, the Commission again recommended to the Arkansas Supreme Court that it should permanently remove Judge Simes from the bench. Filing No. 40, ¶ 52. Upon review, the Arkansas Supreme Court accepted some of the Commission's findings, modified others, and rejected some of its findings. Ultimately, the Arkansas Supreme Court rejected the Commission's recommendation of removal and instead ordered that Judge Simes be reprimanded. *Id.*, 2011 Ark. 193, 2011 WL 1681672 at *25.

Judge Simes filed his original federal court complaint in this matter while the Weaver case was pending with the Commission. Filing No. 1. He sought a temporary restraining order to prevent the Commission from going forward with a scheduled hearing in the matter. Filing No. 2. The defendants moved to dismiss the complaint and opposed the temporary restraining order. Filing Nos. 16-18. This court denied the motion for temporary restraining order and later denied the motion to dismiss. Filing No. 21. The action was stayed while the state judicial discipline process moved forward,

under the *Younger* abstention doctrine.  *Younger v. Harris*, 401 U.S. 37 (1971).  Filing No. 26.

After the Arkansas Supreme Court issued its ruling in the *Weaver* case, this court lifted the stay on these proceedings and allowed the plaintiff to file an amended complaint.  Filing No. 39.  The amended complaint, Filing No. 40, omitted several defendants, and the remaining defendants move to dismiss.

In his amended complaint, Judge Simes alleges that he has had to operate in a racially hostile environment since the beginning of his judicial career.  In his first claim, he alleges he was targeted for removal by the Commission and subjected to bad faith, defective, and biased proceedings before the Commission.  *Id.* at ¶ 69, p. 21.  He also alleges that he was treated differently than white judges in the Commission's investigations and prosecutions of complaints.  *Id.*  He alleges that the Commission has removed two black judges and tried to remove Judge Simes twice, but that no white judge has ever been removed.  He alleges that in 2008 he was informed that his picture was posted on an appliance in the Commission's office and he states that he found a cartoon of a stick figure whose head was decapitated by a buzz-saw in the record in one of the proceedings.  *Id.* at 16.  He alleges that the Commission's investigation of his complaints was markedly different from those of white judges in Arkansas.  *Id.* at 17-18. He outlines several examples of differential treatment in the complaint.  *See id.*  He further alleges that the sanctions imposed upon him were more severe than those levied on similarly situated white judges.  *Id.* at 19.  Also, he alleges he was denied due process in connection with the complaints.  *Id.* at 21.

Judge Simes's second claim is directed at defendant executive director David Stewart.  *Id.* at 22.   He alleges that director Stewart made false and defamatory statements against him and violated the rules and regulations of the Commission by publicly announcing that Simes had been accused of ordering a newspaper reporter not to write a story, of improperly pressuring the mayor, and of attempting to prevent people from talking to the Commission.    In the First Amended Complaint, he asserts his second claim under state law, but in his brief he states the claim is premised on 42 U.S.C. § 1983.

The defendants move to dismiss: (1) all claims for money damages against the Commission and the Commissioners in their official capacities based on the Eleventh Amendment; (2) all claims against the Commissioners in their individual capacities; and (3) all claims against executive director Stewart on the ground of absolute prosecutorial immunity.  Defendants also argue that there is no justiciable case or controversy with respect to Claim 1 and that Judge Simes fails to state a claim for relief with respect to Claim 2.  Defendants further argue the court should decline to exercise supplemental jurisdiction over the plaintiff's state law claims.  In their brief, the defendants allude to absolute judicial immunity.

## LAW

### A.  Standard of Review—Motion to Dismiss

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007) (quoting Fed. R. Civ. P.

8(a)(2)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).  In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'"  *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level."  *Twombly, 550 U.S. at 555-56*.  In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face."  *Id.* at 547

*Twombly* is based on the principles that (1) the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.* at 678.  Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense."  *Id.* at 663-64.  Accordingly, under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  *Id.*  Although legal

conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully.).

Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly*, 550 U.S. at 558, 556; *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (explaining that something beyond a faint hope that the discovery process might lead eventually to some plausible cause of action must be alleged). When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Fed. R. Civ. P. 12(b)(6). *Twombly*, 550 U.S. at 558; *Iqbal*, 556 U.S. at 679 (stating that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

## B. Justiciability

"The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012). "The express limitation of the Declaratory Judgment Act to cases 'of actual controversy' is explicit recognition of this

principle." *Golden v. Zwickler*, 394 U.S. 103, 110 (1969). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser*, 422 U.S. at 401. "[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" *Preiser*, 422 U.S. at 401 (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam)). "To be cognizable in a federal court, a suit must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012). "The question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* "Because the test to determine the existence of a "substantial controversy" is imprecise, the decision of whether such controversy exists is made upon the facts on a case-by-case basis." *Id.* (citation omitted).

"A case becomes moot if it can be said with assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Kennedy Building Assoc. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631(1979)).

There is a limited exception to mootness for claims that are capable of repetition, yet evading review. "To come within this narrow exception, the following two elements

must exist:  (1) there must be a reasonable expectation that the same complaining party will be subjected to the same action again, and (2) the challenged action must be of a duration too short to be fully litigated before becoming moot."  *Iowa Prot. & Advocacy Servs. v. Tanager, Inc.*, 427 F.3d 541, 544 (8th Cir. 2005)).

### C.  Eleventh Amendment Immunity

Under the Eleventh Amendment, states and arms of the state possess sovereign immunity from suits.  *Alden v. Maine*, 527 U.S. 706, 713 (1999); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *see Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (holding that, as an agency of the State of Arkansas, the Eleventh Amendment barred all of the plaintiff's 42 U.S.C. § 1983 claims against Arkansas State University, regardless of the nature of the relief sought).  It is clear that in the absence of consent, a suit in which the state or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  This jurisdictional bar applies to the state or its agencies regardless of the nature of the relief sought.  *Id.* at 100; *see also Monroe*, 495 F.3d at 594 (noting that although state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908), the same doctrine does not extend to states or state agencies).  There is no dispute that the Commission is a state entity.  See *Commission on Judicial Discipline & Disability v. Digby*, 303 Ark. 24, 792 S.W.2d 594 (1990).  Similar state entities have been found immune from suit under the Eleventh Amendment.  *See Lawrence v. Chabot*, 182 Fed. App'x 442 (6th Cir. 2006) (holding that the State Bar and Board of Examiners were immune from suit under

the Eleventh Amendment); *Caffey V. Alabama Supreme Court*, 469 Fed. App'x 748, 2012 WL 918799 (11th Cir. 2012) (state bar immune from suit under Eleventh Amendment); *McKeown v. New York State Comm'n on Judicial Conduct*, 377 Fed. App'x 121, 2010 WL 1977825 (2d Cir. 2010) (state grievance and judicial conduct committees immune under Eleventh Amendment); *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (judicial conduct committee immune under Eleventh Amendment).

Similarly, the Commissioners are immune from suit for money damages in their official capacities since a suit against a public employee in his or her official capacity is a suit against the agency itself. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974) (Eleventh Amendment immunity extends to actions against state officials sued in their official capacities); *Dodd*, 623 F.3d at 569 (treating a suit against a highway patrol officer in his official capacity as a claim against the highway patrol); *Caffey*, 469 Fed. App'x at 751 (official capacity defendants immune from suit for monetary damages). *Kentucky v. Graham*, 473 U.S. at 159, 167 (1985) ("[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment").

However, Eleventh Amendment immunity does not extend to individual state officers sued in their individual capacities. *Capogrosso*, 588 F.3d at 185. Also, state officials may still be sued for prospective injunctive relief without violating the Eleventh Amendment. *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005).

**D.  Judicial Immunity**

The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity.  *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993).  Typically, judges, prosecutors and witnesses enjoy absolute immunity.  *Stein v. Disciplinary Bd. of the Supreme Court of New Mexico*, 520 F.3d 1183, 1190 (10th Cir. 2008).  But, such immunity is not always available to them.  *Id.*  Judges enjoy absolute immunity from suit for money damages unless they act outside of their judicial capacity or in the clear absence of jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986).  The touchstone for the doctrine's applicability has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights."  *Antoine*, 508 U.S. at 435-36 (quoting *Burns v. Reed*, 500 U.S. 478, 500 (1991); *see also Forrester v. White*, 484 U.S. 219, 227 (1988) ("immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches") (emphasis in original).  "Whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."  *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

Judicial immunity also extends to others who perform functions closely associated with the judicial process.  *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); Judges and officials who have duties that are functionally comparable to those of judges are entitled to absolute immunity.  *Butz v. Economou*, 438 U.S. at 478, 513 (1978); *VanHorn v. Oelschlager*, 457 F.3d 844, 847 (8th Cir. 2006) ("VanHorn I") (State Racing

Commission entitled to absolute, quasi-judicial immunity); *Anton v. Getty*, 78 F.3d 393, 395 (8th Cir. 1996) (finding parole commissioners, hearing examiners, and probation officers protected by absolute immunity); *Destek Group, Inc. v. New Hampshire Public Utils. Comm'n*, 318 F.3d 32, 41 (1st Cir. 2003) ("Absolute immunity is available to certain 'quasi judicial' agency officials who, irrespective of their title, perform functions essentially similar to those of judges . . . in a setting similar to that of a court") (internal quotation and citation omitted); *Dunham v. Wadley*, 195 F.3d 1007, 1010 (8th Cir. 1999) (veterinary licensing board members who perform quasi-judicial functions are entitled to absolute immunity); *see also Snyder v. Nolen*, 380 F.3d 279, 286-87 (7th Cir. 2004) (noting that immunity is extended to non-judges in two circumstances:  quasi-judicial conduct, i.e., actions of non-judicial officers acting in a judicial capacity; and actions that are more administrative in nature taken pursuant to the explicit direction of a judicial officer).  Absolute, quasi-judicial immunity only extends to claims against defendants sued in their individual—not official-capacities.  *VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007) ("*VanHorn II*").

To determine which persons are covered under quasi-judicial immunity, courts employ a functional approach under which absolute immunity flows not from rank or title or location within the government, but from the nature of the responsibilities of the individual officer.  *See Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985); *Butz v. Economou*, 438 U.S. 478, 512-16 (1978); *Howard v. Suskie*, 26 F.3d 84, 86 (8th Cir. 1994) (noting crucial distinction between agency actions which begin or are part of a judicial or quasi-judicial administrative process, and agency actions which are independent of such a process).  Whether the function of a person or entity is "a

'classic' adjudicatory function so as to entitle [them] to the protection of absolute immunity as opposed to qualified immunity turns on a number of factors." *Brown v. Griesenauer*, 970 F.2d 431, 436 (8th Cir. 1992); *Krueger v. Lyng*, 4 F.3d 653, 656 (8th Cir. 1993). Those factors are: "'(a) the need to assure that the individual can perform his [or her] functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.'" *Buser v. Raymond*, 476 F.3d 565, 568 (8th Cir. 2007) (quoting *Krueger*, 4 F.3d at 656).

Weighing evidence, making factual determinations, determining sanctions, and issuing written decisions are duties functionally comparable to the duties performed by courts. *See Dunham*, 195 F.3d at 1011 (affording absolute quasi-judicial immunity to veterinary examining board); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (actions as a hearing officer of state administrative tribunal clearly taken in a judicial capacity); *McKeown*, 377 Fed. App'x 121 (those involved in preparing and adjudicating attorney discipline proceedings are eligible for absolute immunity); *Disraeli v. Rotunda*, 489 F.3d 628, 635 (5th Cir. 2007) (state securities board members immune); *Krueger*, 4 F.3d at 653 (actions in appointing hearing examiner and adopting recommendations was adjudicatory in nature; actions of committee members in firing employee were not); *VanHorn v. Oelschlager*, 457 F.3d at 847 ("[p]ersons who perform quasi-judicial functions are [also] entitled to absolute immunity"); *but see DiBlasio v. Novello*, 344 F.3d

292, 296-302 (2d Cir. 2003) (summary suspension process too dissimilar to judicial process to warrant absolute immunity).

As a general matter, the judicially created doctrine of judicial immunity does not bar a claim for prospective declaratory or injunctive relief against a judicial officer acting in his judicial capacity.  *Pulliam v. Allen*, 466 U.S. 522, 542 (1984); *Mireles v. Waco*, 502 U.S. 9, 10 n.1 (1991) (per curiam).  The 1996 amendment to § 1983, however, limits the relief available to plaintiffs to declaratory relief.  *See Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (per curiam); *Haas v. Wisconsin*, 109 Fed. App'x 107, *114, 2004 WL 1799360, **6 (7th Cir. 2004) (stating "in 1996, Congress enacted the Federal Courts Improvement Act ("FCIA"), Pub.L. No. 104–317, 110 Stat. 3847 (1996), in which it amended § 1983 to provide that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable"); *Lawrence v. Kuenhold*, 271 Fed. App'x 763, 766 n.6 (10th Cir. 2008) (noting that "the doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well"); *Roth v. King*, 449 F.3d 1272, 1286 (D.C. Cir. 2006) ("42 U.S.C. § 1983, as amended in 1996 by the [FCIA], explicitly immunizes judicial officers against suits for injunctive relief.").  Claims for injunctive relief and attorney's fees against other officials performing quasi-adjudicative functions are likewise barred.  *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (involving parole board).  Prosecutors are not immune from claims for injunctive relief, however.  *Bolin v. Story*, 225 F.3d at 1242.

Judicial immunity is not a bar to declaratory relief.  Lawrence, 271 Fed. App'x at 766 ("A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act."); see 42 U.S.C. § 1983 (placing no limitations on declaratory relief).  However, when a litigant seeks only a declaration of past liability, not a declaration of future rights, a declaratory judgment serves no purpose and thus, is not available.  See Lawrence, 271 Fed. App'x at 766.

Absolute immunity also extends to prosecutors performing prosecutorial functions.  Id. at 292-93; see Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976) (holding that prosecutors are entitled to absolute immunity from damages for acts or omissions associated with the judicial process, in particular, those taken in initiating a prosecution and in presenting the government's case).  Similarly, absolute immunity extends to others performing acts functionally comparable to a prosecutor's.  Thomason v. SCAN Volunteer Servs., Inc., 85 F.3d 1365, 1373 (8th Cir. 1996) (affording absolute prosecutorial immunity to employees of non-profit organization for initiating child-protective proceedings).  However, "[i]f a prosecutor engages in activities 'akin to those of an administrative or investigative officer, rather than those of an advocate,' the prosecutor is no longer entitled to absolute immunity."  Disraeli, 489 F.3d 635 (quoting Geter v. Fortenberry, 849 F.2d 1550, 1553 (5th Cir. 1988); Stein, 520 F.3d at 1190 ("prosecutorial immunity applies only to actions taken by a prosecutor in the role of advocate").[2]  Vesting a mix of functions in one person can obscure the line between acts taken as a prosecutor and acts taken as an administrator.  Stein, 520 F.3d at 1190-

---

[2] In Disraeli, the Fifth Circuit noted that "[a]s long as the prosecutor acts within his discretionary authority, however, he is entitled to qualified immunity."  Id., 489 F.3d at 635.  Defendants have not raised the defense of qualified immunity.

91 (investigating and prosecuting disciplinary actions and maintaining records were actions in role as an advocate; whereas, failing to serve copies, contacting court and requesting hearings were not—characterizing the latter as duties "not of the type generally assigned to prosecutors").

## DISCUSSION

Arkansas law clearly delineates the responsibilities of the Commission.   In relevant part the statute states:

> (a) The Judicial Discipline and Disability Commission shall initiate or shall receive information, conduct investigations and hearings, and make recommendations to the Supreme Court concerning:
> (1) Allegations of judicial misconduct;

Ark. Code Ann. § 16-10-404(a).   Further, the law states:  "Members of the Judicial Discipline and Disability Commission, referees, commission counsel, and staff shall be absolutely immune from suit for all conduct in the course of their official duties."  Ark. Code Ann. Stat. § 16-10-406.   "The word 'judge' in this subchapter means anyone, whether or not a lawyer, who is an officer of the judicial system performing judicial functions, including an officer such as a referee, special master, court commissioner, or magistrate, whether full-time or part-time."  Ark. Code. Ann. § 16-10-401.   "The Supreme Court shall adopt rules with regard to all matters of Judicial Discipline and Disability Commission operations and all disciplinary and disability proceedings and promulgate rules of procedure."  Ark. Code. Ann. § 16-10-405.

The court finds the Commission and the Commissioners in their official capacities are immune from any suit for damages under the doctrine of sovereign immunity.  There is no dispute that the Commission is a state entity.  *See Digby*, 303 Ark. 24. Likewise,

the Commissioners in their official capacities are immune from suit for damages.  *See Edelman*, 415 U.S. at 651.

The court also determines that the Commissioners are entitled to quasi-judicial immunity.  The court finds that all the relevant factors weigh in favor of this finding.  *Buser*, 476 F.3d at 568 (setting forth the following factors).  First, the Commissioners must be able to make their decisions without fear of intimidation or harassment; second, there is a clear path of judicial review through the Arkansas Supreme Court for alleged unconstitutional conduct; third, the Commissioners must be free of political influence while making these decisions; and fourth, as stated previously, there is a right of judicial review.  It is clear from the face of the amended complaint that the Commissioners performed adjudicatory functions as outlined by the statute.  The Eighth Circuit has unequivocally held that just as judges are protected by absolute immunity, those "[p]ersons who perform quasi-judicial functions are [also] entitled to absolute immunity."  *VanHorn*, 457 F.3d at 847 (*quoting Dunham*, 195 F.3d  at 1010).  The Eighth Circuit stated:

> The Supreme Court has held that absolute immunity is appropriate when an official's functions are similar to those involved in the judicial process, an official's actions are likely to result in lawsuits for damages by disappointed parties, and sufficient safeguards exist in the regulatory framework to control unconstitutional conduct.

*VanHorn*, 457 F.3d at 847 (*quoting Dunham*, 195 F.3d 1010).  Accordingly, the court finds the Commissioners are entitled to both sovereign and quasi-judicial immunity in this case; therefore, the plaintiff has no claim for money damages.

The court now turns to the issue of prosecutorial immunity.  Judge Simes argues that the allegations in his amended complaint show intentional targeting of Judge Simes

for removal of office, and he contends there is no prosecutorial immunity for these actions.  This allegation is directed at the executive director, David Stewart. The Eighth Circuit Court of Appeals has afforded absolute prosecutorial immunity to individuals other than criminal prosecutors who perform duties "functionally comparable to that of a prosecutor." *Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1373 (8th Cir. 1996).  Arguably, although the court need not definitively decide, some of the actions of the executive director in his official capacity mirror those of a person acting as a prosecutor.  He presents evidence, calls witnesses, investigates, and submits his case to the Commission for review.  He does some of those things that a prosecutor would do in a trial setting.  However, he does play an administrative role in this process also.  The court finds that the executive director is absolutely immune from suit for all his official prosecutorial-like actions.  Second, the court finds the Arkansas statute cloaks him as a staff member with absolute immunity.  Ark. Code Ann. § 16-10-406.  Third, the executive director is not an actual decision-maker.  It appears that only the nine Commission members have a vote.  Fourth, with regard to any personal allegations of race discrimination, the right of review to the Arkansas Supreme Court, as discussed below, has ameliorated any potential race discrimination claim, and there is no allegation that Judge Simes is being subjected to any such conduct currently.  Accordingly, the court finds that executive director David Stewart is immune from a federal claim for money damages for such prosecutorial acts.

The court wishes to comment on the allegations of race discrimination.  The court takes claims of racial discriminatory very seriously.  Judge Simes makes significant allegations of intentional race discrimination against the defendants in their individual

capacities.  Judge Simes claims that his request for declaratory injunctive relief against future discrimination is not subject to dismissal by reason of sovereign immunity.  The court finds, however, that Judge Simes's argument is not dispositive of the issue.  The allegations on the face of the complaint show there is no justiciable controversy with respect to those claims.   Judge Simes filed his complaint and amended complaint alleging intentional discrimination against the Commission and Commissioners.  This court concluded that Judge Simes had a justiciable claim but stayed the matter pending a decision by the Arkansas Supreme Court.  The Arkansas Supreme Court reviewed all of the allegations set forth by Judge Simes.   He received full judicial review.  The Arkansas Supreme Court made findings that both supported and disagreed with the Commission.  There is no claim that the Arkansas Supreme Court committed error or racially discriminated against the plaintiff.   Consequently, the court finds there is no justiciable controversy currently before this court.   "A case becomes moot if it can be said with assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Kennedy Building Assoc. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (*citing County of Los Angeles v. Davis*, 440 U.S. 625, 631(1979)).  In general, the judicial power of this court extends only to actual cases and controversies.  *United States v. Melton,* 666 F.3d 513, 515 n.3 (8th Cir. 2012).  There is no remedy the court could give Judge Simes now, and this court certainly could not order prospective relief on an issue that might never arise.  The United States Supreme Court has stated: "[p]ast exposure to illegal conduct does not in itself show a present case or controversy

regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

The court finds that under the first cause of action, Judge Simes is basically asking this court to issue an advisory opinion for potential filings against him in the future.  The court is in general prohibited from issuing such advisory opinions.  *See KCCP Trust v. City of North Kansas City,* 432 F.3d 897, 899 (8th Cir. 2005) ("Article III limits the federal courts to deciding 'Cases' and 'Controversies' and thus prohibits us from issuing advisory opinions.").  Likewise as stated in *KCCP*, a claim is not ripe if the alleged injury "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Id.* at 899; *see also Care Committee v. Arneson,* 638 F.3d 621, 631 (8th Cir. 2011).  "Federal courts are not empowered to give opinions on moot questions or declare rules of law which cannot affect the matter in issue in the case before it." *Jefferson Co. v. Halverson (In re Paulson),* 276 F.3d 389, 392 (8th Cir.2002); *United States v. Asset Based Resource Group, LLC*, 612 F.3d 1017, 1019-20 (8th Cir. 2010).  The "test for mootness . . . is whether the relief sought would, if granted, make a difference to the legal interests of the parties[.]" *Air Line Pilots Ass'n, Int'l v. UAL Corp.,* 897 F.2d 1394, 1396 (7th Cir. 1990) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)); *see also Lang v. Social Sec. Admin,* 612 F.3d 960, 966 (8th Cir. 2010). "Questions of mootness are matters of subject matter jurisdiction[.]" *Charleston Housing Auth. v. USDA*, 419 F.3d 729, 739 (8th Cir.2005); *see also Keup v. Hopkins,* 596 F.3d 899, 904 (8th Cir. 2010).  Judge Simes does not allege that he is currently being subjected to any unconstitutional proceeding.  All of his contentions concern past

behaviors with the Commission and members of the Commission.   In this case, the court cannot grant relief to Judge Simes, absent any current claim of injury.

In his second cause of action, Judge Simes asserts a claim for violation of his rights under the "First and Fourteenth Amendments to the Constitution of the United States, in conjunction with 42 U.S.C. § 1983 and State law as well."   Filing No. 40, Amended Complaint, at 22.   He alleges the executive director made false and defamatory statements to a news reporter about him.   In particular, he asserts that defendant Stewart "announced publicly that [Judge Simes] had been accused of ordering a newspaper reporter not to write a story, of improperly pressuring a mayor of Helena-West-Helena to reinstate a fired employee, and attempting to prevent people from talking to the commission."   *Id.*   He contends that the statements "were false, defamatory, and unfairly stigmatized Plaintiff and violated the rules and regulations of the Commission regarding the confidentiality of proceedings within the jurisdiction of the agency."   Although the plaintiff characterizes his allegations as arising under the First and Fourteenth Amendments to the Constitution, the court finds the allegation amounts to nothing more than a state law defamation claim.[3]

Ordinarily, allegations of defamation, without more, do not state a claim for a violation of constitutional rights.   *See Paul v. Davis*, 424 U.S. 693, 706 (1976) (holding that the Fourteenth Amendment is not a font of tort law).   The arguable basis for such a constitutional claim would either be that the allegedly defamatory statements amounted to a deprivation of Judge Simes's liberty interest in his reputation without due process of law or violated the First Amendment because the harm to his reputation chilled his right

---

[3] In his reply brief, the plaintiff argues that the claim is one for retaliation for exercise of his First Amendment rights.   The court is unable to glean such a claim from the pleadings.

to speech or political participation.   *See, e.g., id.* at 709 (alteration of legal status, combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1989) (holding that a party can show a cognizable injury by showing that its First Amendment rights have been chilled by harm to reputation or threat of criminal prosecution).   To show a chilling effect, however, a plaintiff must have sustained, or be in "'immediate danger of sustaining a direct injury as the result of the action.'" *Laird v. Tatum*, 408 U.S. 1, 13 (1972) (quoting *Ex parte Levitt*, 302 U.S. 633, 634 (1937)). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 13-14. Similarly, due process protections are triggered by defamatory statements only when accompanied by a change in the legal status. *Paul v. Davis*, 424 U.S. at 706, 711-12. A mere defamatory statement is not sufficient to establish a claim under 42 U.S.C. § 1983.   *Id.* at 712.   Liberty interests are implicated only where the government actor levels accusations "that are so damaging as to make it difficult or impossible" to escape the stigma of those charges. *Winegar v. Des Moines Indep. Cmty. Sch. Dist.*, 20 F.3d 895, 899 (8th Cir. 1994) (involving allegations of unjustified child abuse); *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008) (stating "[t]o establish protected liberty interests, plaintiffs [are] required to establish that a [government] official, in connection with discharging plaintiffs, publicly made allegedly untrue charges against them that would stigmatize them so as to seriously damage their standings and associations in their community, or foreclose their freedom to take advantage of other employment opportunities") (quotation omitted.)); *see also Board of Regents v. Roth*,

408 U.S. 564, 573-74 (1972).  The requisite stigma has generally been found when a government employer has accused an employee of dishonesty, immorality, criminality, racism, and the like.  *See Stodgill,* 512 F.3d at 476.

The court finds the allegations of the plaintiff's amended complaint do not amount to a constitutional claim.  He has not alleged a concrete injury to give rise to his purported "chilling effect" claim.  Although he argues that defendant Stewart made the statements to deter and damage Judge Simes's attempt to be reelected, Judge Simes was in fact reelected.  Further, the allegedly defamatory statements were not sufficiently stigmatizing to implicate liberty interests.  Also, as evidenced by his reelection, Judge Simes did not suffer any injury to his reputation that seriously damaged his standing and associations in his community, or foreclosed his freedom to take advantage of other opportunities.  The Arkansas Supreme Court was apparently not influenced by the executive director's statements, rejected the Commission's recommendation, and declined to permanently remove Judge Simes from the bench.  The statements allegedly made by the executive director to the local paper simply do not give rise to a claim of constitutional dimension.  Accordingly, the court finds that Judge Simes has not stated a claim cognizable under federal law in connection with his defamatory statement claim.

Regardless of how the claims are couched, the second cause of action is focused on state law allegations of defamation.  The court's exercise of jurisdiction over a state law claim after federal claims are dismissed is wholly discretionary.  *Crest Const. II, Inc. v. Doe,* 660 F.3d 346, 359 (8th Cir 2011).  Assuming without deciding that Judge

Simes's allegations state a claim for defamation under state law,[4] the court will not exercise its discretion to assume supplemental jurisdiction over that claim.  The court finds it is appropriate for state courts to address the issue, if any claim exists.

For the reasons stated herein, the court concludes that this case is dismissed.

THEREFORE, IT IS ORDERED:

1.  Plaintiff's motion for an extension of time to reply, Filing No. 23, is denied as moot.

2.  The stay in this case is lifted.

3.  Defendants' motion to dismiss, Filing No. 43, is granted.  This case and all claims are hereby dismissed.

4.   A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 27th day of September, 2012.

BY THE COURT:


s/ Joseph F. Bataillon
U.S. District Judge, District of Nebraska

---

[4]Under Arkansas law, the following elements must be proven to support a claim of defamation, whether it be by the spoken word (slander) or the written word (libel): (1) the defamatory nature of the statement of fact; (2) that statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. Dodson, supra. A viable action for defamation turns on whether the communication or publication tends or is reasonably calculated to cause harm to another's reputation.  *Lancaster v. Red Robin Intern, Inc.,* 2011 WL 5562667 (Ark. App. 2011). A plaintiff in a defamation case must prove actual damage to his reputation, but the showing of harm is slight.  *Id.*; *see also Roeben v. BG Excelsior Ltd. P'ship,* 344 S.W.3d 93 (Ark. App. 2009).  A plaintiff must prove that defamatory statements have been communicated to others and that the statements have detrimentally affected those relations.  *Roeben,* 344 S.W.2d at 98.  The law does not require proof of actual out-of-pocket expenses. *Id.*